IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

NANCY ROARK, individually and on behalf
of all others similarly situated,

        *Plaintiffs,*

  -v-

JOEL BIEBER, LLC T/A THE JOEL BIEBER
FIRM,

        *Defendant.*

Case No.: 3:24-cv-00600-HEH

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS'
CONSENT MOTION FOR APPROVAL OF SETTLEMENT**

    Named Plaintiff Nancy Roark, on her own behalf and on behalf of all opt-in Plaintiffs (collectively "Plaintiffs"), respectfully requests that the Court approve the Settlement Agreement and Release of Claims (the "Agreement") that Plaintiffs reached with Defendant Joel Bieber, LLC t/a The Joel Bieber Firm ("Defendant"), which results in full resolution of this case brought under the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201, *et seq.*; the Virginia Wage Payment Act, Va. Code §§ 40.1-29, *et seq.*; and the Virginia Overtime Wage Act ("VOWA"), Va. Code §§ 40.1-29.2, *et seq.* Plaintiffs believe that claims under the FLSA, like those released by Plaintiffs in the Agreement, may not be waived or released without United States Department of Labor or district court approval. Defendant does not oppose this Motion.

**I.    INTRODUCTION**

    Plaintiffs seek Court approval of the Agreement, *see* **Exhibit A**, because claims under the FLSA may not be waived or released without United States Department of Labor or court approval. *See Taylor v. Progress Energy, Inc.*, 493 F.3d 454, 460 (4th Cir. 2007*)* ("[U]nder the FLSA . . .

there is a judicial prohibition against the unsupervised waiver or settlement of claims." (citing *D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 114–16 (1946)); *see also Baust v. City of Va. Beach*, 574 F. Supp. 3d 358, 363 (E.D. Va. 2021) ("All FLSA settlements must be approved either by the United States Department of Labor or the court." (quoting *Carr v. Rest Inn, Inc.*, No. 2:14-cv-00609, 2015 WL 5177600, at *2 (E.D. Va. Sept. 3, 2015) (collecting cases)); *Hendrix v. Mobilelink Virginia, LLC*, No. 2:16-cv-00394, 2017 WL 2438067, at *1 (E.D. Va. May 26, 2017) ("Back wage claims under FLSA may be settled only (1) by a payment of unpaid wages supervised by the Department of Labor, or (2) by a 'stipulated judgment' entered by a court." (quoting *Lynn's Food Stores, Inc. v. U.S. Dep't of Labor*, 679 F.2d 1350, 1355 (11th Cir. 1982)). "Such approval is required for both class actions and individual cases." *Baust*, 574 F. Supp. 3d at 363 (quoting *Carr*, 2015 WL 5177600, at *2).

## II. LEGAL STANDARD

Although the Fourth Circuit has not directly addressed what factors courts should consider when analyzing proposed FLSA settlements, courts in this district follow the Eleventh Circuit's framework in *Lynn's Food Stores*. *See, e.g.*, *id.*; *Gagliastre v. Capt. George's Seafood Rest., LP*, No. 2:17-cv-00379, 2019 WL 2288441, at *1 (E.D. Va. May 29, 2019); *Kuntze v. Josh Enters., Inc.*, No. 2:18-cv-00038, 2019 WL 2179220, at *1 (E.D. Va. May 20, 2019); *Pili v. Patel*, No. 3:18-cv-00317, 2019 WL 8888162, at *1 (E.D. Va. Feb. 19, 2019); *LaFleur v. Dollar Tree Stores, Inc.*, 189 F. Supp. 3d 588, 593 (E.D. Va. 2016); *Patel v. Barot*, 15 F. Supp. 3d 648, 654 (E.D. Va. 2014).

Under the *Lynn's Food Stores* framework, a district court must first assess whether "there are FLSA issues that are 'actually in dispute.'" *See Kuntze*, 2019 WL 2179220, at *1 (quoting *Saman v. LBDP, Inc.*, 2013 WL 2949047, at *3 (D. Md. 2013)). "Next, the district court must

2

determine whether the settlement is 'a reasonable compromise over [the] issues.'" *Id.* (quoting *Lynn's Food Stores*, 679 F.2d at 1354); *see also Singletary v. Sterling Transp. Co., Inc.*, No. 2:12-cv-00298, 2012 WL 12875517, at *2 (E.D. Va. Dec. 14, 2012). "There is a 'strong presumption in favor of finding a settlement fair' that the court should keep in mind when determining whether a settlement is fair, adequate and reasonable." *Gagliastre*, 2019 WL 2288441, at *1 (quoting *LaFleur*, 189 F. Supp. 3d at 593).

Courts also must review awards of attorneys' fees in FLSA settlements. *See Baust*, 574 F. Supp. 3d at 364 (citing *Carr*, 2015 WL 5177600, at *3); *see also Franklin v. Va. Int'l Terminals, LLC*, No. 2:19-cv-00066, 2020 WL 13605443, at *1 (E.D. Va. Feb. 26, 2020); *Patel*, 15 F. Supp. 3d at 656–57. "[T]he FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement." *Baust*, 574 F. Supp. 3d at 364 (quoting *Carr*, 2015 WL 5177600, at *3). In the case of contingent fees agreed to in an FLSA settlement agreement, the court "must find '(1) that the fees were negotiated separately from the damages, so that they do not infringe on the employee's statutory award, and (2) that they are reasonable under the lodestar approach.'" *Hendrix*, 2017 WL 2438067, at *2 (quoting *Ovalle v. LTTC Enters.*, 2014 U.S. Dist. LEXIS 113990, at *1 (D. Md. Aug. 13, 2014) (emphasis omitted) ("FLSA requires judicial review of the reasonableness of counsel's legal fees to assure both that counsel is compensated adequately and that no conflict of interest taints the amount the wronged employee recovers under a settlement agreement.")); *see also Lyle v. Food Lion, Inc.*, 954 F.2d 984, 988 (4th Cir. 1992) (requiring that a contingent fee awarded in a FLSA case also be reasonable under the lodestar approach).

### III. ARGUMENT

#### A. There Are FLSA Issues Actually in Dispute

As to the first issue, namely whether there are FLSA issues actually in dispute, courts "examine the pleadings in the case, along with the representations and recitals in the proposed settlement agreement." *Brockman*, 2018 WL 4956514, at *2 (quoting *Dupree*, 30 F. Supp. 3d at 408). There are FLSA issues actually in dispute in this matter, including whether Plaintiffs worked overtime (over 40 hours in any week during the limitations period) and, if so, whether they were paid overtime appropriately. "A bona fide dispute exists when an employee makes a claim that he or she is entitled to overtime payment." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 1.08cv1310, 2009 WL 3094955, at *16 (E.D. Va. Sept. 28, 2009).

The court in *Kuntze* found an actual dispute to exist where the parties disagreed on whether the plaintiff was properly classified as exempt from overtime, whether the plaintiff was owed time-and-a-half overtime or was appropriately paid under the half-time rate of the fluctuating workweek method, and, if the plaintiff was misclassified, whether the misclassification was willful. *See Kuntze*, 2019 WL 2179220, at *2. In *Brockman*, the court found FLSA issues actually in dispute where the defendants contested the plaintiffs' claims and filed an answer denying the plaintiffs' allegations. *Brockman*, 2018 WL 4956514, at *3. Moreover, the parties' proposed settlement agreement specifically stated that it was not an admission of wrongdoing, indicating that the parties continued to dispute the defendants' liability. *Id.*

Here, there continue to be actual FLSA issues in dispute. The parties' pleadings "demonstrate an actual disagreement as to the factual allegations that undergird the action." *See id.*, at *2 (citing *Lynn's Food Stores*, 679 F.2d at 1354). Plaintiffs maintain that Defendant did not properly track the number of hours they worked each week and, as in *Kuntze*, that they were not

4

paid at the appropriate time-and-a-half overtime rate for the time they worked in excess of 40 hours each week. *See id.* Defendant denies all of these allegations. *See* Doc. 21, Def.'s Answer and Affirmative Defenses at 8. These denials show that there are FLSA issues actually in dispute. *See Brockman*, 2018 WL 4956514, at *3. And, as in *Brockman*, the Agreement is not an admission of Defendant's wrongdoing; rather, Defendant denies any wrongdoing. Accordingly, the Court should find a bona fide dispute in this matter.

### B. The Agreement Is Fair and Reasonable

In determining whether a settlement is a "reasonable compromise," courts consider the following factors:

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [] counsel . . . ; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Kutze*, 2019 WL 2179220, at *1 (quoting *Saman* 2013 WL 2949047, at *3); *see also LaFleur*, 189 F. Supp. 3d at 593; *In re Dollar Gen. Stores FLSA Litig.*, 2011 WL 3841652, at *2 (E.D.N.C. Aug. 23, 2011); *Lomascolo*, 2009 WL 3094955, at *10. In considering these factors, "the court keeps in mind the strong presumption in favor of finding a settlement fair." *See Baust*, 574 F. Supp. 3d at 365.

#### 1. The Discovery that Has Taken Place Supports Approval

Significant discovery has been completed in this case. Plaintiffs propounded requests for production and interrogatories on Defendant, and Defendant propounded the same on Plaintiffs. Defendant took named Plaintiff Roark's deposition on May 23, 2025; and Plaintiffs took the deposition of three employees of Defendant: (1) Jason Hart, Esq. (May 20, 2025); (2) Kristen Jones (May 20, 2025); and Geoffrey Glick, Esq. (May 28, 2025). Collectively, the parties produced more

5

than 46,000 pages of documents. The parties have had "adequate time to conduct sufficient discovery [and] to 'fairly evaluate the liability and financial aspects of [the] case.'" *See Kuntze*, 2019 WL 2179220, at *2 (quoting *Lomascolo*, 2009 WL 3094955, at *11). Accordingly, the Court should find this factor weighs in favor of approving the Agreement.

### 2. The Late Stage of the Proceedings, Including the Complexity, Expense, and Likely Duration of the Litigation, Support Approval

This matter is at an intermediate stage of the proceedings. While Defendant's Fed. R. Civ. P. 30(b)(6) deposition remains outstanding, the Parties have significantly completed discovery, with the next major procedural step being Defendant's anticipated motion to decertify the collective action,[1] along with any dispositive motions. Plaintiffs and Defendant have had ample time to "obtain and review evidence, to evaluate their claims and defenses[,] and to engage in informed arms-length settlement negotiations with the understanding that it would be a difficult and costly undertaking to proceed to the trial of this case." *See Lomascolo*, 2009 WL 3094955, at *11. This is a complex collective action, and without the Court's approval of the Agreement and dismissal of the action with prejudice, the litigation could continue for months with costly trial preparation and trial. This settlement provides monetary relief to Plaintiffs now, rather than risking an uncertain and unpromised resolution of contested issues. Settlement further provides Defendant with peace of mind and certainty as to exposure resulting from Plaintiffs' allegations. These circumstances weigh in favor of approval of the Agreement. *See Baust*, 574 F. Supp. 3d at 365–66; *but see Kuntze*, 2019 WL 2179220, at *2 (finding early stages to favor of approval because early settlement could avoid costly litigation).

---

[1] Conditional certification of this matter was granted on June 23, 2025 (ECF No. 36). A total of fourteen individuals, inclusive of Named Plaintiff Roark, opted in to this matter.

6

### 3. There Was No Fraud or Collusion in the Agreement

The third factor looks at whether there has been any fraud or collusion in reaching the settlement. "There is a presumption that no fraud or collusion occurred between counsel, in the absence of any evidence to the contrary." *See Baust*, 547 F. Supp. 3d at 366 (quoting *Davis v. BT Ams. Inc.*, No. 2:16-cv-206, 2017 WL 11506967, at *4 (E.D. Va. May 10, 2017)); *see also Lomascolo*, 2009 WL 3094955, at *12. This factor weighs in favor of the Court's approval of the Agreement because there has been no fraud of collusion in reaching the Agreement that could have compromised the bargaining process. As in *Baust*, 574 F. Supp. 3d at 366, and *Kuntze*, 2019 WL 2179220, at *3, Plaintiffs, on the one hand, and Defendant, on the other hand, negotiated at arm's length for over the course of two court-hosted settlement conferences with Magistrate Judge Speight, involving numerous position statement exchanges, and no signatory objects to the Agreement. *See also Brockman*, 2018 WL 4956514, at *3.

### 4. Plaintiffs Have Been Represented by Experienced Counsel

The next factor looks to whether the plaintiffs have been represented by sufficiently experienced counsel who was able to vigorously advocate for the plaintiffs' position. When counsel has "experience in federal court and employment litigation . . . their opinion is entitled to weight." *Gagliastre*, 2019 WL 2288441, at *3.

Throughout this litigation, Plaintiffs have been represented by experienced and competent counsel. Plaintiffs' counsel, Gregg Greenberg and Robert Tucci, have significant experience in wage-and-hour matters, including complex collective and class actions, and have served as counsel and class counsel for plaintiffs in dozens of wage-and-hour matters in federal courts throughout the Fourth Circuit. *See* **Exhibit B**, Declaration of Robert W.T. Tucci (hereinafter "Tucci Decl."), ¶ 5. Plaintiffs' pleadings and arguments show "sufficient 'knowledge of the procedures in this

court, the applicable law, and the factual basis for the claims and defenses necessary to provide competent legal advice.'" *See Kuntze*, 2019 WL 2179220, at *3 (quoting *Hargrove v. Ryla Teleservs., Inc.*, No. 2:11-cv-00344, 2013 WL 1897027, at *3 (E.D. Va. Apr. 12, 2013), *report and recommendation adopted*, 2013 WL 1897110, at *1 (E.D. Va. May 3, 2013)); *see also Baust*, 574 F. Supp. 3d at 366; *Brockman*, 2018 WL 4956514, at *4. The Court should find that this factor also weighs in favor of approval of the Agreement.

### 5. The Opinions of Counsel Support Approval

The fifth factor looks to the opinions of counsel. Counsel for Plaintiffs as well as Defendant have endorsed the Agreement as fair and reasonable, which the Court should find weighs in favor of approving the Agreement. *See Kuntze*, 2019 WL 2179220, at *3 (affording "some weight" to counsel's opinion of the fairness and reasonableness of a settlement); *see also Brockman*, 2018 WL 4956514, at *4.

### 6. The Probability of Plaintiffs' Success on the Merits and the Settlement Amount in Relation to the Potential Recovery Support Approval

Finally, the Court must consider "the probability of [P]laintiff[s'] success on the merits and the amount of the settlement in relation to the potential recovery." *See Hendrix*, 2017 WL 2438067, at *1. In weighing this factor, some courts look at the plaintiff's settlement sum as a percentage of the maximum amount of the plaintiff's potential recovery. Courts have found a range of settlements to be fair and reasonable. *See, e.g.*, *Baust*, 547 F. Supp. 3d at 366–67 (finding a settlement of 25% of the plaintiffs' maximum potential recovery to be fair when combined with attorneys' fees); *Smith v. Q.E.D. Sys., Inc.*, No. 2:19-cv-00215, 2020 WL 975368, at *3 (E.D. Va. Feb. 11, 2020), *report and recommendation adopted*, 2020 WL 974416 (E.D. Va. Feb. 28, 2020) (finding 60% fair); *Kuntze*, 2019 WL 2179220, at *3 (finding a recovery of "just above 50% of what [the p]laintiff could receive" to be fair to both parties); *Brockman*, 2018 WL 4956514, at *4

(finding 40–50% fair); *Funkhouser v. City of Portsmouth*, No. 2:13-cv-00520, 2015 WL 12765639, at *3 (E.D. Va. May 14, 2015) (finding 30% fair given the "relative difficulty" in the plaintiffs proving their claims); *Duprey v. Scotts Co. LLC*, 30 F. Supp. 3d 404, 409 (D. Md. 2014) (finding 80% to be fair). Courts also consider the strength of the plaintiff's claims. *See, e.g.*, *Davis*, 2017 WL 11506967, at *5 (finding a $250 settlement fair because the plaintiffs' claims were "based on their memories, with very little documentation").

Plaintiffs and Defendant dispute the probability of Plaintiffs' success on the merits at trial, but agree that a jury would have to decide multiple factual issues that would bear on Plaintiffs' ultimate recovery—or lack thereof. When evidence presented indicates that a plaintiff has "significant hurdles to overcome to affect any recovery under the FLSA," this factor "weighs heavily in favor of finding the settlement fair." *Patel*, 15 F. Supp. 3d at 656.

Plaintiffs believe that if they were successful at trial, their potential recovery under the FLSA would amount to all unpaid overtime, using Plaintiffs' estimates of the average number of hours they worked per week (given Defendant's failure to maintain timekeeping records), as well as potentially liquidated damages (and treble damages in the case of the VWPA), in addition to an award of attorneys' fees and costs. Defendant maintains that a jury would not find Plaintiffs entitled to any recovery because Defendant claims they did not work overtime. Defendant further argues that Plaintiffs have been fully paid in the weeks they claims otherwise, and their claims are supported only by their own memory and contrary to documentary evidence. Plaintiffs' potential recovery under the FLSA (for all fourteen Plaintiffs combined) therefore ranges from zero to $276,371.58 (assuming a 3-year statute of limitations, an award of liquidated damages, and no equitable tolling of Plaintiffs' statute of limitations).

9

Under the Agreement, Plaintiffs, collectively, will receive $150,000.00, which amounts to a substantial portion of the maximum, is approximately 109% of their actual damages under the FLSA, and exceeds Plaintiffs' worst-case scenario of recovering nothing and having to pay their litigation costs.[2] Given the uncertainty over any recovery at all should the matter proceed to a jury trial, the possibility of Plaintiffs' full recovery does not outweigh the benefits of settling this case now, with the added benefit of having their attorneys' fees paid. The Court should find a recovery of 54.27% of Plaintiffs' maximum potential recovery under the FLSA to be fair and to favor approval of the Agreement. *See Smith*, 2020 WL 975368, at *3; *Kuntze*, 2019 WL 2179220, at *3.

### C. The Amount of Attorneys' Fees and Costs in the Agreement are Reasonable

The Agreement provides for $100,000.00 in attorneys' fees and costs paid to Plaintiffs' counsel. The Court should find this to be reasonable in light of the hours Plaintiffs' counsel worked and the expenses their counsel reasonably incurred. The Fourth Circuit has provided a three-step process for courts to determine the reasonableness of attorneys' fees: "(1) determine a lodestar figure; (2) subtract fees for hours spent on unsuccessful claims unrelated to successful ones; and (3) evaluate the degree of success of the plaintiffs." *See Randolph v. PowerComm Constr., Inc.*, 780 F. App'x 16, 22 (4th Cir. 2019) (unpublished). This process is used to decide fee disputes.

Where the parties have agreed on an amount of fees, courts give some deference to the parties' agreement and also consider the "lodestar princip[les] 'as a guide' or a 'cross check' to assessing the fairness of the negotiated sum." *Davis*, 2017 WL 11506967, at *3 (quoting *Stone v. SRA Int'l, Inc.*, No. 2:14-cv-00209, 2015 WL 12748271, at *3 (E.D. Va. Mar. 20, 2015)); *see also*

---

[2] Indeed, two opt-in Plaintiffs who opted-in beyond their applicable statute of limitations period, and one opt-in Plaintiff who opted in outside the 45-day opt-in period, will each receive settlement funds under this Agreement when they otherwise might not be entitled to any FLSA damages.

10

*Hendrix*, 2017 WL 2438067, at *2 (explaining that, in the case of contingent fees agreed to in a FLSA settlement agreement, the court "must find (1) that the fees were negotiated separately from the damages, so that they do not infringe on the employee's statutory award, and (2) that they are reasonable under the lodestar approach" (internal quotations omitted)). "[T]he lodestar amount . . . is defined as a 'reasonable hourly rate multiplied by hours reasonably expended.'" *Carr*, 2015 WL 5177600, at *3 (quoting *Grissom v. Mills Corp.*, 549 F.3d 313, 320–21 (4th Cir. 2008)).

When considering the appropriateness of an amount of attorneys' fees in fee disputes, courts weigh 12 factors. *See Gomez v. Seoul Gool Dae Gee Inc.*, 434 F. Supp. 3d 381, 384 (E.D. Va. 2020) (citing *Grissom*, 549 F.3d at 320–21); *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978). These factors include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber*, 577 F.2d at 226 n.28; *see also Randolph*, 715 F. App'x at 230 n.2; *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243–44 (4th Cir. 2009). The Court need only consider those factors that are applicable, and the Court does not consider the factors a second time if the factors have already been incorporated in the Court's lodestar analysis. *See LaFleur*, 189 F. Supp. 3d at 595 (citing *E. Associated Coal Corp. v. Dir., OWCP*, 724 F.3d 561, 570 (4th Cir. 2013); *Baust*, 574 F. Supp. 3d at 364; *Gomez*, 434 F. Supp. 3d at 384 (citing *Bergstrom v. Dalkon Shield Claimants Trust (In re A.H. Robins Co.)*, 86 F.3d 364, 376 (4th Cir. 1996)).

11

### 1. The Fees are Reasonable under the Lodestar Analysis

Plaintiffs' counsel's total lodestar in this matter, excluding the work performed on this motion, is $176,121.07. *See* Tucci Decl. at ¶ 7. Plaintiffs also incurred $7,162.93 in costs and expenses in prosecuting this matter. *See id.* The Court first calculates the lodestar amount by multiplying a reasonable hourly rate for Plaintiff's counsel by the number of hours reasonably expended. *See Baust*, 574 F. Supp. 3d at 367. There is a "strong presumption" that the lodestar figure is reasonable. *Page v. Va. State Bd. of Elections*, No. 3:13-cv-00678, 2015 WL 11256614, at *2 (E.D. Va. Mar. 11, 2015) (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986)).

For the reasons discussed below, the $100,000.00 in fees and expenses in the proposed settlement is a reasonable recovery when compared to counsel's lodestar.

#### a. Plaintiffs' Counsel's Hourly Rates Are Reasonable

Mr. Greenberg's hourly rate is $750 per hour, Mr. Tucci's hourly rate is $535 per hour, and their paralegals billed at $250 per hour. *See* Tucci Decl. at ¶ 6. The hourly rates charged by timekeepers at Plaintiffs' counsel's firm are reasonable and consistent with their experience and the prevailing rates for other wage-and-hour fee awards in this district and geographic location. *See, e.g.*, *Haley v. FRC Balance LLC*, No. 1:23cv666 (DJN), 2025 U.S. Dist. LEXIS 14305, at *4 (E.D. Va. Jan. 27, 2025) ("In assessing an appropriate lodestar, the Court finds the hourly rate sought by Plaintiff — $535 for her attorney [Mr. Tucci], who has five years of experience, and $250 for her paralegal — reasonable."); **Exhibit C** (Final Awards issued in the collective action arbitration *Blakeman et al. v. Geneva Enterprises, LLC et al.*, which took place in Alexandria, Virginia, and approved Messrs. Greenberg and Tucci's hourly rates, along with their paralegal rates).

      **b.**  **Plaintiff's Counsel's Hours Included in the Fee Are Reasonable**

  The parties have spent a substantial amount of time litigating this case. Cumulatively among all timekeepers, Plaintiffs' counsel has invested 330.45 hours prosecuting this case (not including the time spent preparing this motion). Plaintiffs' counsel mooted a motion to dismiss, conducted discovery, took three depositions, prepared named Plaintiff Roark for a deposition taken by Defendant, corresponded with the thirteen opt-in Plaintiffs, and negotiated with Defendant. The hours that Plaintiffs' counsel expended on this case and subsumed into the Agreement, from filing to the present, are reasonable. *See, e.g.*, *Davis*, 2017 WL 11506967, at *6 (finding 169.05 hours to be reasonable for discovery plan, motion for certification, and hearing on motion for certification); *Carr*, 2015 WL 5177600, at *4 (finding 154.5 hours reasonable where the parties engaged in written discovery, took three depositions, and disclosed an expert, but did not brief conditional certification or any dispositive motions); *Galvez v. Americlean Servs. Corp.*, No. 1:11-cv-01351, 2012 WL 2522814, at *5 (E.D. Va. June 29, 2012) (finding 151.3 hours reasonable for "client meetings, creating a discovery plan, responding to interrogatories, telephone calls and meetings with witnesses, review of payroll records and other documents, and [a] deposition"); *Edelen v. Am. Residential Servs., LLC*, 2013 WL 3816986, at *13 (D. Md. July 22, 2013) (finding approximately 175 hours appropriate); *Hargrove*, 2013 WL 1897027, at *7 (finding reasonable 230 hours in attorney work for "drafting pleadings, retaining local counsel, meeting with clients, preparing discovery, preparing and defending the named plaintiff's deposition, and preparing and attending hearings and mediation," as well as 250 hours in support staff work for "drafting and reviewing documents and discovery, as well as communicating with clients").

### c.     The *Barber* Factors Support the Agreement's Fees

The *Barber* factors support the $100,000.00 in fees and costs provided in the Agreement. The first, second, third, and ninth factors concern the attorney's time, labor, and skill, as well as the novelty and difficulty of the matter. *See Barber*, 577 F.2d at 226 n.28. FLSA wage-and-hour matters are "fact intensive, requiring significant commitments of time and personnel to litigate," *see Baust*, 574 F. Supp. 3d at 369 (quoting *Davis*, 2017 WL 11506967, at *6); *Hargrove*, 2013 WL 1897027, at *7, and this matter involved additional issues, including collective action certification. As discussed above, Plaintiffs' counsel's fees are customary for like work, so the fifth and twelfth *Barber* factors also support Plaintiffs' lodestar. Accordingly, the Court should therefore find the Agreement's provided compensation for Plaintiffs' attorneys' fees and total costs of $100,000.00 to be reasonable because it is a product of counsel's reasonable hourly rate and hours reasonably expended and is supported by the *Barber* factors.

### 2.     The Fee Agreement Does Not Include Unsuccessful Claims

The second step is to "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *See Randolph*, 780 F. App'x at 22. In this case, the amount of fees provided for in the in Agreement does not include hours expended on any unsuccessful portions of Plaintiff's case, as no claims have been dismissed in this matter. The whole of Plaintiffs' counsel's time was spent on the litigation as a whole and is compensable. *See Randolph*, 780 F. App'x at 22–23 ("Where the plaintiff's claims involve 'a common core of facts' or are based on 'related legal theories,' then '[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.' In that instance, the court 'should focus on the significance of the overall relief obtained by the plaintiff in relation to

14

the hours reasonably expended on the litigation.'" (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 435 (1983)).

### 3. Plaintiffs' Success

Finally, the Court looks to the plaintiffs' success. The Fourth Circuit has explained that, "[i]n attempting to quantify success, the court '*must* compare the amount of damages sought to the amount awarded.'" *Id.* (quoting *Mercer v. Duke Univ.*, 401 F.3d 199, 204 (4th Cir. 2005)). Here, Plaintiffs' requested relief was based upon their own recollection of overtime hours worked. The Agreement's provision of settlement payments to Plaintiffs likely exceeds whatever unpaid overtime that Plaintiffs may have been able to prove at a trial under the FLSA (not including liquidated damages). Plaintiffs' counsel thus secured a large percentage of Plaintiffs' actual damages, which supports the $100,000.00 in negotiated Plaintiff's attorneys' fees and costs. Although Defendant does not admit any wrongdoing and maintains that Plaintiffs would not be successful at trial, the amount Plaintiffs will be awarded in this Agreement is close to their actual damages. Indeed, "[a] compromise is the essence of a settlement" and "inherent in compromise is a yielding of absolutes and abandoning of highest hopes." *Lomascolo*, 2009 WL 3094955, at *10 (citing *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)).

Moreover, courts have approved similar awards of fees. *See, e.g.*, *Davis*, 2017 WL 11506967, at *6 (approving award where attorneys' fees represented 75 percent of the total recovery); *Spencer v. Cent. Servs., LLC*, No. CCB 10-03469, 2012 WL 142978, at *4 n.4 (D. Md. Jan. 13, 2012) (approving approximately $57,000 in attorneys' fees and costs for a total recovery of $11,500 for three plaintiffs); *Winingear v. City of Norfolk*, No. 2:12cv560, 2014 WL 3500996, at *6 (E.D. Va. July 14, 2014) (the Court "has routinely approved percentage recoveries in FLSA cases approaching forty percent of the total recovery"); *Gagliastre*, 2019 WL 2288441, at *5

15

(noting that fees awarded under the "percentage of recovery" method in settlements under $100 million, as in this case, "have ranged from 15% to 40%") . This is because "[i]n FLSA cases, like other discrimination or civil rights cases, the attorneys' fees need not be proportional to the damages plaintiffs recover [] because the award of attorneys' fees in such cases encourages the vindication of Congressionally identified policies and rights." *Spencer*, 2012 WL 142978, at *4 n.4 (quoting *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 511 (S.D.N.Y. 2011) (alterations omitted)).

## IV.    CONCLUSION

For the foregoing reasons, and consistent with the "overriding public interest in favor of settlement," *Lomascolo*, 2009 WL 3094955, at *10, as well as the "strong presumption in favor of finding a settlement fair," *id.* (quoting *Camp v. Progressive Corp.*, 2004 WL 2149079, at *5 (E.D. La. Sept. 23, 2004)), *see also Morris v. Cumberland Cnty. Hosp. Sys., Inc.*, 2014 WL 12780144, at *1 (E.D.N.C. Mar. 26, 2014) (noting presumption in favor of finding settlement fair), Plaintiffs respectfully request that the Court enter the accompanying proposed order, approve the Agreement, and dismiss this action with prejudice.

Date: October 10, 2025                                                              Respectfully Submitted,

/s/ Robert W.T. Tucci
Robert W.T. Tucci (VSB # 97446)
Gregg C. Greenberg (VSB #79610)
ZIPIN, AMSTER, & GREENBERG LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Telephone:     (301) 587-9373
Facsimile:     (240) 839-9142
Email: rtucci@zagfirm.com
Email: ggreenberg@zagfirm.com

*Counsel for Plaintiffs*

16

## CERTIFICATE OF SERVICE

On October 10, 2025, I served ☐ *the original* ☒ *a true copy* of the foregoing document entitled:

- **MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' CONSENT MOTION FOR APPROVAL OF SETTLEMENT**

on all the appearing and/or interested parties in this action as follows:

Steven D. Brown, Esq.
Lindsey S. Komisin, Esq.
Katherine L. Yourth, Esq.
ISLERDARE P.C.
1111 East Main Street, Suite 1605
Richmond, Virginia 23219
Telephone: (804) 489-5500
Facsimile: (804) 234-8234
Email: sbrown@islerdare.com
Email: lkomisin@islerdare.com
Email: kyourth@islerdare.com

*Counsel for Defendant*

☐ **(BY MAIL)** I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Silver Spring, Maryland in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

☐ **(BY OVERNIGHT MAIL)** I am personally and readily familiar with the business practice of ZIPIN, AMSTER, & GREENBERG LLC for collection and processing correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by the USPS for overnight delivery.

☒ **(BY ELECTRONIC TRANSMISSION)** I caused said document(s) to be served via electronic transmission through either the Court's CM/ECF system, via electronic mail, or an electronic service provider to the addressee(s) listed above on the date below.

☐ **(BY PERSONAL SERVICE)** I delivered the foregoing document by hand delivery to the addressed named above.

☐ **(BY PROCESS SERVER)** I delivered the foregoing document to a process server to effectuate process via personal service. Once a proof of service is received from the process server, our office will file the proof of service reflecting the date of personal service by the process server.

I declare under penalty of perjury under the laws of the Commonwealth of Virginia that the foregoing is true and correct.

Executed on October 10, 2025, at Silver Spring, Maryland.

                                                */s/ Robert W.T. Tucci*
                                                Robert W.T. Tucci